# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| Timbrook, *et al.* ) | Case No. 3:15-cv-02599-JZ |
| ) | |
| Plaintiffs, ) | Hon. Jack Zouhary |
| ) | |
| vs. ) | |
| ) | |
| Rick's City Diner, LLC, *et al.* ) | |
| ) | |
| Defendants. ) | |
| ) | |

## JOINT MOTION AND MEMORANDUM OF LAW
## FOR APPROVAL OF SETTLEMENT PURSUANT TO
## SECTION 216(b) OF THE FAIR LABOR STANDARDS ACT

Leslie O. Murray (0081496)
John T. Murray (0008793)
Michael Stewart (0082257)
MURRAY & MURRAY CO., L.P.A.
111 East Shoreline Drive
Sandusky, Ohio  44870-2517
Telephone: (419) 624-3000
Facsimile: (419) 624-0707
leslie@murrayandmurray.com
jotm@murrayandmurray.com
mjs@murrayandmurray.com

Patricia A. Wise (0030441)
Brian C. Kalas (0070963)
Scot A. Hinshaw (0096079)
Niehaus Wise & Kalas Ltd
7150 Granite Circle, Suite 203
Toledo, Ohio  43617-1173
Telephone: (419) 517-9090
Facsimile: (419) 517-9091
wise@nwklaw.com
kalas@nwklaw.com
hinshaw@nwklaw.com

*Attorneys for Defendants*

David W. Goldense (0015448)
David W. Goldense Co. LPA
50 Public Square, Suite 920
Cleveland, Ohio 44113
Telephone: (216) 241-0300
dwgoldense@aol.com

*Attorneys for Plaintiffs*

## INTRODUCTION

This is a collective and class action lawsuit for unpaid minimum and overtime wages brought by Named Plaintiffs Katie Timbrook and Amy Kelly (formerly Amy Mann), individually and on behalf of other similarly-situated tipped employees working in the front of the house for Defendants Rick's City Diner 2, LLC and Richard M. Salem. In the Complaint, Plaintiffs alleged that Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"); the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code §§ 4111.01 *et seq.* ("the Ohio Wage Act"); and the Ohio Prompt Pay Act, Ohio Rev. Code § 4413.15 ("Prompt Pay Act") by failing to pay current and former tipped employees in the front of the house for time worked off the clock at the end of their shifts and by failing to provide all tips to employees. Plaintiffs further alleged that Defendants violated Ohio common law. Plaintiffs' specific common law claims were for unjust enrichment and conversion due to Defendant's pay practices.[1] The Plaintiffs sought compensation from Defendants for full minimum wages, unpaid overtime and liquidated damages pursuant to federal and state wage laws, the FLSA and the Ohio Wage Act; for statutory penalties under the Ohio Prompt Pay Act; and for compensatory, punitive, and other damages under Ohio common law. [Dkt. No. 1.] The allegations supporting Plaintiffs' state law class claims were similar to those supporting their FLSA claims. (*Id.*) Defendants generally denied the allegations and asserted various affirmative defenses. [Dkt. No. 36.]

After extensive discovery, conditional collective certification, and two settlement conferences, the parties negotiated a resolution, which is further set forth in a Confidential Settlement Agreement ("Settlement Agreement") (filed under seal as Exhibit A). The Settlement

---

[1] The original Complaint also included gender discrimination claims under O.R.C. § 4112.02(A). However, those claims were dismissed by the Court for lack of subject matter jurisdiction and refiled in the Lucas County Court of Common Pleas. [Dkt. No. 35.] They are not a subject of this resolution.

Agreement resolves all remaining claims at issue in this litigation. The parties agree the resolution and resulting Settlement Agreement are fair and reasonable and were reached in order to resolve several *bona fide* disputes regarding Plaintiffs' alleged claims. With this Joint Motion, Plaintiffs and Defendants ask the Court to approve the settlement and enter the Agreed Dismissal Order (attached as Exhibit B).

## BACKGROUND AND PROCEDURAL HISTORY

In July 2013, Defendant Richard M. Salem opened Defendant Rick's City Diner 2, LLC ("RCD") on Monroe Street in Toledo, Ohio. In the front of the house at RCD, Mr. Salem employs servers, expediters (food runners), bussers, hosts and cashiers. This wage and hour action alleges tip pool, overtime and off-the-clock violations relating to servers, hosts, bussers and expediters. During most of the period at issue, hosts, bussers and expediters made approximately $5.00 per hour, plus a tip out from the servers, and servers made the server minimum of half the applicable minimum wage, plus tips. RCD servers tipped out a percentage of their gross sales that was then split among the host, busser and/or expediter working during the particular shift. The percentage of the tip out varied depending on the day of the week and changed during the over three year period that RCD has been open. The parties disputed whether proper notice of the variation of the tip out percentages was provided to RCD's tipped employees and the evidence in discovery differed on the issue.

RCD had a point of sale ("POS") system it used to record a server's sales and tips. Typically, customers tipped on a credit card at the cashier, by cash at the cashier, or by cash on their tables. Credit card tips were recorded automatically in the POS system and cash tips were reported by servers in the POS system at the end of their shifts. Individually labeled tip cups were used near the register for cash tips to be placed when a server was not nearby or otherwise

3

busy. The parties disputed whether or not Defendant Salem took tips out of the tip cups for his personal use and the evidence in discovery differed on the issue.

At the end of every shift, a server report would be run from the POS system that provided a breakdown of their total sales and their credit card tips for the day. Prior to running the report, servers input the amount of cash tips they also received that day. Thus, the report provided a breakdown of cash and credit card tips and recorded them in the system. The manager, head server, or Defendant Salem would then use the server report to calculate the amount of the tip out. That amount of tip out was then deducted from the credit card tips that the server was owed from the cash register. The parties disputed whether Defendant Salem made any additional deductions from servers' remaining amount of tips and the evidence in discovery varied on this issue.

The POS system was also used for employees to clock in and out and recording those times. Servers worked various shifts and shifts changed over the years. The parties disputed whether servers typically worked six or seven hour shifts. During a period of time from RCD's opening until approximately April of 2016, Defendant Salem required servers to clock out of the POS system around 3 p.m. in order for them to run their server reports so that he or the head server could reconcile the reports as soon as possible. Often, after clocking out, the servers would still have closing work to do in the diner. The parties disputed the amount of time servers worked after clocking out.[2] Additionally, the parties disputed whether Defendant Salem ever required the hosts, bussers, or expediters to clock out at and continue working. Plaintiffs also alleged that they were not properly compensated by Defendants for work over 40 hours in a workweek.

---

[2] Once Defendant Salem learned that the servers could print a server report from the POS system without clocking out, he changed his procedure so that servers were not clocking out until their work was completely finished.

4

In discovery, the parties sought various documents, including payroll records, schedules, time clock records and tax filings. The parties also took several depositions, including the depositions of the Named Plaintiffs, Defendant Salem and a corporate designee on behalf of Defendant RCD. Subsequently, Defendants consented to conditional certification of the tipped employees for purposes of the FLSA opt-in collective. [Dkt. No. 44.] No class certification pursuant to Fed. R. Civ. P. 23 has been sought because the parties concluded that the opt-in procedures contained in the FLSA better suited the unique facts of this case. In cooperation with Defendants, Named Plaintiffs sent Consent Notices to the last known addresses of approximately 100 potential opt-in members. At the conclusion of the opt-in period, 12 individuals had opted in, including the Named Plaintiffs. [Dkt. Nos. 3, 4, 24, 47-55.] The FLSA and state statutory wage claims of opt-in Plaintiffs Alesha Stobinski, Breanna Scott, Rebecca Wynnik, Tiffani Bofia and Valerie Spangler were time barred by the statute of limitations. Thus, they were limited to proving any loss through the state common law claims.

After the conclusion of the opt-in period, the parties agreed to engage in settlement discussions before Judge James Knepp. [Dkt. Nos. 56-57.] During the initial settlement conference, the parties focused on resolving the liability allegations of the opt-in and Named Plaintiffs and set off negotiation related to their claim for attorneys' fees. A resolution with regard to liability was reached. However, it involved discounted values of some of Plaintiffs' claims given the *bona fide* disputes regarding the alleged liability of Defendants. As further discussed in this Motion, the resolution reached was fair and reasonable. In a second settlement conference held before District Judge Jack Zouhary, the parties reach an agreement with regard to Plaintiffs' claim for attorney's fees. [Dkt. No. 58.] Judge Zouhary subsequently dismissed the case without prejudice pending the filing of settlement terms and a subsequent dismissal with

prejudice. [Dkt. No. 59.] The resolution was detailed in the Settlement Agreement that is filed under seal as Exhibit A to this Motion.

## DISCUSSION

Under 29 U.S.C. § 216(b) of the FLSA, the Court must approve the settlement of the Plaintiffs' federal statutory wage allegations.[3] *Schneider v. Goodyear Tire & Rubber Co.*, 2014 U.S. Dist. LEXIS 78117, at **3-5 (N.D. Ohio June 9, 2014). The procedure for obtaining court approval is for the parties to present to the district court a proposed settlement, upon which the court may enter a stipulated judgment after determining whether the settlement is fair. *Gentrup v. Renovo Servs, LLC,* 2011 WL 2532922, at *2 (S.D. Ohio Jun. 24, 2011).

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353, n.8 (11th Cir. 1982). Typically, courts regard the adversarial nature of a litigated FLSA case an adequate indicator of the fairness of the settlement. *Id.* at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354. If a settlement in an FLSA suit reflects "a reasonable compromise over issues" that are "actually in dispute," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Snide v. Disc. Drug Mart, Inc.,* 2013 U.S. Dist. LEXIS 40078, at **3-4 (N.D. Ohio February 27, 2013) (quoting *Gentrup*, 2011 U.S. Dist. LEXIS 67887).

The Sixth Circuit has identified the following seven factors a court may consider in determining whether the settlement of FLSA claims is fair and reasonable: "(1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of

---

[3] A settlement approval process pursuant to Fed. R. Civ. P. 23 is not necessary here because no opt-out class was certified and Plaintiffs have agreed to dismiss the class claims as part of the parties' settlement.

discovery completed; (4) the likelihood of success on the merits; (5) the opinion of class counsel and representatives; (6) the reaction of absent class members; and, (7) public interest in the settlement." *Gentrup,* 2011 WL 2532922, *2 (citing *Crawford v. Lexington-Fayette Urban Cnty. Gov't,* 2008 WL 4723399 (E.D. Ky. Oct. 23, 2008)). The court may choose to consider only factors that are relevant to the instant settlement and may weigh particular factors according to the demands of the case. The ultimate question is whether the Plaintiffs are better served if the litigation is resolved, rather than pursued to trial. *Gentrup* at *3.

This matter has been in litigation for over a year. There is no evidence of fraud or collusion in negotiating or structuring the proposed settlement, nor did any occur. The parties engaged in extensive discovery and a notice and opt-in period. Only then did the parties reach an arm's length negotiated settlement facilitated by the Court. Moreover, the Plaintiffs' attorney's fees were separately negotiated. Plaintiffs' counsel consents to the negotiated settlement and has the approval of the Named Plaintiffs. The terms in the Settlement Agreement demonstrate that Plaintiffs were compensated for the following:

- All unpaid overtime demonstrated on time records in discovery for which no *bona fide* dispute regarding liability existed;

- Compromised amount of disputed off-the-clock time worked paid at full minimum wage – as opposed to paid at server minimum rate, which is half the minimum wage;

- Compensation for difference between tipped employee minimum wage paid and full minimum wage for alleged tip pool violation at discounted rate of 45% due to *bona fide* dispute regarding the alleged tip pool violation;

- Liquidated damages on all damages categories listed above; and

7

- Compromised amount of disputed or partially time-barred claims of five of the 12 opt-in Plaintiffs.

There is no guarantee that Plaintiffs would be successful at trial given the *bona fide* disputes regarding the allegations in the Complaint.[4] Whereas, the Settlement Agreement provides Plaintiffs with significant compensation. The certainty and finality that comes with settlement also weighs in favor of approval. Likewise, such a ruling promotes the public's interest in encouraging settlement. *See Dillworth v. Case Farms Processing, Inc.,* 2010 WL 776933, *6 (N.D. Ohio Mar. 8, 2010) (*citing Crawford,* 2008 WL 4723399, at *9).

Additionally, when a settlement agreement includes an award of attorney's fees, such fees must be reasonable. *Clevenger v. JMC Mechanical, Inc.*, 2015 WL 12681645 (S.D. Ohio Sept. 25, 2015). Here, Plaintiffs' counsel agreed to a fee amount that was significantly below their original demand of $132,336.50 and reasonably proportional to the total compensation provided to Plaintiffs in the Confidential Settlement Agreement. Thus, the attorney's fees in the Confidential Settlement Agreement are likewise reasonable.

For these reasons, the Confidential Settlement Agreement provides the opt-in collective members with attractive compensation, when compared with the uncertainty, delay, and risks associated with continued litigation. Accordingly, the parties request that the Court approve the FLSA Settlement.

## **CONCLUSION**

For the foregoing reasons, the parties respectfully request that the Court approve this settlement and enter the proposed Agreed Order submitted herewith.

---

[4] Additionally, a *bona fide* dispute existed as to whether several of the opt-in members' claims were barred by the two or three year statute of limitations of the FLSA.

Respectfully submitted,


 /s/ Leslie O. Murray (by SAH w/ permission)
Leslie O. Murray (0081496)
John T. Murray (0008793)
Michael Stewart (0082257)
MURRAY & MURRAY CO., L.P.A.
111 East Shoreline Drive
Sandusky, Ohio 44870-2517
Telephone: (419) 624-3000
Facsimile: (419) 624-0707
leslie@murrayandmurray.com
jotm@murrayandmurray.com
mjs@murrayandmurray.com

*Attorneys for Plaintiffs*


  /s/ Scot A. Hinshaw
Patricia A. Wise (0030441)
Brian C. Kalas (0070963)
Scot A. Hinshaw (0096079)
Niehaus Wise & Kalas Ltd
7150 Granite Circle, Suite 203
Toledo, OH 43617-1173
Telephone: (419) 517-9090
Fax: (419) 517-9091
wise@nwklaw.com
kalas@nwklaw.com
hinshaw@nwklaw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been electronically filed this 18th day of May, 2017. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system and in accordance with local rules and the Federal Rules of Civil Procedure.

/s/ Scot A. Hinshaw
Scot A. Hinshaw (0096079)
*Attorney for Defendants*